IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| VERITEX COMMUNITY BANK et al., | § | |
| | § | |
| Appellants, | § | |
| | § | |
| vs. | § | Civil Case No. 4:18-cv-00129-O |
| | § | |
| | § | |
| JOHN OSBORNE, | § | |
| | § | |
| Appellee. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Appellant Veritex Community Bank's (the "Appellant") Brief (ECF No. 6), filed May 30, 2018; Appellee John Osborne's (the "Appellee") Brief (ECF No. 9), filed July 13, 2018; and Appellant's Reply (ECF No. 10), filed August 3, 2018. This action is an appeal of an order from the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. After considering the briefing, record on appeal, and relevant law, the Court **DENIES** the appeal and holds that the bankruptcy court's order should be and is hereby **AFFIRMED**.

### I. JURISDICTION

This appeal arises from the bankruptcy court's January 30, 2018 Final Judgment. *See* Not. Appeal, ECF No. 1. In its order, the bankruptcy court discharged all of Appellee's obligations to Appellant. This Court exercises jurisdiction pursuant to 28 U.S.C. § 158.

### II. UNDERLYING FACTS

In 2012, Appellee John Osborne ("Appellee"), a board-certified cardiologist, formed State of the Heart Cardiology PLLC ("State of the Heart"). Appellant's Br. 9, ECF No. 6. Sometime thereafter, Appellee and his wife approached Appellant Veritex Community Bank f/k/a

1

Independent Bank of Texas ("Appellant") to discuss financing options for State of the Heart. *Id*. State of the Heart, through Appellee, then applied for a $500,000 loan from Appellant. *Id*. at 10. As new customers, Appellee and his wife provided their personal financial statement ("2012 financial statement") to prove their credit worthiness. *Id*. Based in large part on the statement, Appellant executed the loan, on which Appellee executed an unlimited personal guarantee. *Id*. at 11. Appellee did not disclose other leases or contracts under which he was a guarantor. *Id*.

But two days before State of the Heart closed on the first loan with Appellant, it entered into a $1,000,000 leasing agreement for medical equipment. *Id*. Appellee signed a personal guaranty backing the lease agreement. *Id*. Eventually, State of the Heart—and Appellee— defaulted on the lease. *Id*. at 13. Around the time of that default, Appellee began discussing a loan extension with Appellant. *Id*. at 15. Appellant asked for an updated financial statement ("2013 financial statement"). *Id*. Appellee provided an updated statement but did not include debts related to the medical equipment lease. *Id*.

On or around March 12, 2014, Appellant agreed to extend State of the Heart's loan and the parties executed a new agreement. *Id*. at 16. On April 21, 2014, State of the Heart filed for bankruptcy. *Id*. at 17. State of the Heart—and Appellee—subsequently defaulted on the loan agreement. *Id*. On April 24, 2015, Appellant obtained a default judgment against Appellee. *Id*. On June 23, 2015, Appellee and his wife filed for bankruptcy in their personal capacities. *Id*. In that proceeding, Appellee listed its obligation to Appellant as fixed and liquidated. *Id*. On May 3, 2016, Appellant commenced an adversary proceeding against Appellee, seeking to deny him discharge of the obligation under 11 U.S.C. § 523(a)(2)(B). *Id*. at 18.

## III. ISSUES ON APPEAL

The four issues Appellant presents on appeal are:

1. Did the bankruptcy court err when it entered its Final Judgment in favor of Appellee?

2. Did the bankruptcy court err when it granted Appellee a discharge contrary to the evidence introduced and admitted at trial?

3. Did the bankruptcy court err when it granted Appellee a discharge contrary to 11 U.S.C. § 523(a)(2)(B)?

4. Did the bankruptcy court err when it found and concluded that Plaintiff was not reasonable in its reliance on the financial statements provided by appellee which are at issue in this action?

Appellant's Second Am. Designation of Record and Statement of Issues. 3, ECF No. 3.

## IV. STANDARD OF REVIEW

When a district court reviews a bankruptcy court's decision, it functions as an appellate court and utilizes the same standard of review generally applied by a federal court of appeals. *In re Webb*, 954 F.2d 1102, 1104 (5th Cir. 1992). In reviewing conclusions of law on appeal, a *de novo* standard of review is applied. *In re Young*, 995 F.2d 547, 548 (5th Cir. 1993); *In re Allison*, 960 F.2d 481, 483 (5th Cir. 1992). A bankruptcy court's findings of fact are subject to the clearly erroneous standard of review. *Young*, 995 F.2d at 548; *Allison*, 960 F.2d at 483. These findings are reversed only if, based on the entire body of evidence, the court is left "with the definite and firm conviction that a mistake has been made." *Id*. A bankruptcy court's determination of reasonableness of a creditor's reliance under section 523(a)(2)(B) is a question of fact reviewed for clear error. *Id*. at 549.

## V. OBJECTIONS TO THE BANKRUPTCY RULING

Appellant primarily argues the bankruptcy court erred by finding that Appellant unreasonably relied on financial statements provided by Appellee in the course of executing the loan agreement. *See* Appellant's Br. 18, ECF No. 6. Appellant asserts that Appellee hid important facts, that the section 523(a)(2)(B) reasonable reliance test provides a low standard for reasonable reliance, and that Appellant met that low standard. *Id.* at 20–21. Appellee responds by arguing that the bankruptcy court correctly applied the reasonable reliance standard.[1] Appellant also provides specific arguments relating to the 2012 and 2013 financial statements.

### A. The 2012 Financial Statement

The bankruptcy court found Appellant unreasonably relied on Appellee's 2012 financial statement because Appellant (1) knew that State of the Heart would acquire the leased scanning equipment; (2) understood that State of the Heart would finance it; (3) believed the equipment would provide State of the Heart with a marketing advantage; (4) anticipated that radiology and imaging expenses would be $373,000 per year; and (5) either knew—or should have known—that the equipment financer would require a personal guaranty from Appellee. Appellant's Record Excerpts 9–10, ECF No. 6-1. Appellant objects to the bankruptcy judge's finding that Appellant knew State of the Heart would finance the medical equipment and Appellee would personally guarantee it, arguing that leasing procedures differ from banking procedures. Appellant's Br. 24, ECF No. 6.

---

[1] Appellee offers an additional argument on cross-appeal—claiming that the bankruptcy court erred by imputing fraud to Appellee by way of his spouse for purposes of 523(a)(2)(B)(iv). Appellee's Br. 11, ECF No. 9. But Appellee raises that issue on cross-appeal "solely in the event that this Court determines that the Bankruptcy Court erred in its determinations as to Plaintiff's reasonable reliance on the 2012 Financial Statement and the 2013 Spreadsheet." *Id.* at n.50. Because the Court affirms the bankruptcy court's findings, it does not reach the issue on cross-appeal.

B. The 2013 Financial Statement

The bankruptcy court also found Appellant unreasonably relied on Appellee's 2013 financial statement when it extended the original loan because: (1) the financial statement was not on the bank's form; (2) the financial statement was not signed by anyone; (3) the financial statement lists no contingent liabilities; (4) the absence of contingent liabilities was pointed out to Mr. Wood but he approved the financial statement anyway; and (5) although the loan is made to State of the Heart, the bank did not require State of the Heart to present current financial information in connection with the renewal that occurred for the months of September and October 2013. Appellant's Record Excerpts 15, ECF No. 6-1. The bankruptcy court found that these "red flags," when taken together, supported a finding of unreasonable reliance. *Id*.

Appellant argues the bankruptcy court erred by finding red flags "in circumstances where there never were red-flags that would have alerted even an ordinarily prudent lender to the possibility that the representations relied upon were not accurate." Appellant's Br. 24, ECF No. 6. Appellants also argue that the bankruptcy court erred when it found no preexisting relationship between Appellant and Appellee.[2] *Id*. at 25. Finally, Appellants argue that its standard bank procedures did not necessitate the use of their own form, that it had no reason to suspect bad faith on the part of Appellee based on the absence of a report of contingent liability, and that its decision not to require Appellee to present current financial information was reasonable given personal circumstances the Appellee's were facing of which Appellant was aware. *Id*. at 25–26. Appellee

---

[2] Appellant argues that there was a preexisting relationship—albeit short. But Appellant stops short of arguing that there had been "previous business dealings with the debtor that gave rise to a relationship of *trust*." *See Coston*, 991 F.2d at 261 (citing *In re Ledford*, 970 F.2d 1556, 1560 (6th Cir. 1992)) (emphasis added).

5

responds by arguing the bankruptcy court reached the correct conclusion on each of the points above, adding that the 2013 statement was delivered *after* Appellant granted an extension on the original loan—meaning Appellant could not have *actually* relied on the statement. Appellee's Br. 7–8, ECF No. 9.

## VI.   ANALYSIS

Under 11 U.S.C. § 523(a)(2)(B), an obligation for money loaned, an extension, a renewal, or a refinancing of credit will not be discharged in an individual debtor's bankruptcy if it was obtained by use of a statement in writing that is "(1) materially false; (2) respecting the debtor's or an insider's financial condition; (3) on which the creditor to whom the debtor is liable for such money, property, services, or credit *reasonably relied*; and (4) that the debtor caused to be made or published with intent to deceive." 11 U.S.C. § 523(a)(2)(B) (emphasis added). This section "requires not only reasonable reliance but also reliance itself." *Field v. Mans*, 516 U.S. 59, 68 (1995). Under the reasonable reliance standard, Appellant's "conduct must conform to the standard of the reasonable man." *Id.* at 71. And "[w]hether a creditor's reliance is reasonable is to be determined from a totality of the circumstances." *Young*, 995 F.2d at 549 (citing *In re Coston*, 991 F.2d 257 (5th Cir. 1995)).[3]

Appellant asserts the bankruptcy court clearly erred when it ruled Appellant unreasonably relied on Appellee's financial statements. Instead of proving the reasonableness of its actions or disproving the veracity of the court's conclusions, each of Appellant's arguments relies principally

---

[3] "The bankruptcy court may consider, *among other things*: whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any 'red flags' that would have alerted an ordinarily prudent lender to the possibility that the representation relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations." *Coston*, 991 F.2d at 261 (citing *In re Ledford*, 970 F.2d 1556, 1560 (6th Cir. 1992)) (emphasis added).

6

on its view that the bankruptcy court valued the wrong pieces of evidence and failed to place adequate value on others. But as Appellant points out, "a reversal of a finding of reasonable reliance requires a finding that the bankruptcy court's 'account of the evidence is [not] *plausible* in light of the record viewed in its entirety.'" Appellant's Br. 9, ECF No. 6 (citing *Coston*, 991 F.2d at 261–262) (emphasis added). And this Court is "particularly mindful of the opportunity of the bankruptcy court to judge the credibility of the witnesses." *In re Bradley*, 501 F.3d 421, 434 (5th. Cir. 2007) (citing *Young.*, 995 F. 2d at 548 (5th Cir. 1993) (internal quotations and citations omitted).

Here, after reviewing the record, the Court finds that the bankruptcy court's account of the evidence is *at least* plausible—if not likely. Each of Appellant's arguments rest on the same essential premise—that evidence cutting against the bankruptcy court's decision exists, and therefore the bankruptcy court incorrectly weighed that evidence. But even if true, the mere existence of *some* contrary evidence does not automatically render the bankruptcy judge's account of *all* the evidence implausible. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous."). Having reviewed the record, the Court finds "the bankruptcy court's weighing of the evidence is plausible in light of the record taken as a whole" and is "unable to conclude that the bankruptcy court clearly erred." *Bradley*, 501 F.3d at 434.

VII. **CONCLUSION**

For the foregoing reasons, this appeal is **DENIED** and the bankruptcy court's ruling and judgment are hereby **AFFIRMED**.

**SO ORDERED** on this **27th day** of **March, 2019**.

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE